CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
August 13, 2025
LAURA A. AUSTIN, CLERK
BY  s/ S. MELVIN
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| ROBERT MORGAN COLE et al., ) | |
|     Plaintiffs ) | Civil Action No. 3:24-cv-00019 |
| ) | |
| v. ) | MEMORANDUM OPINION & ORDER |
| ) | |
| LUCID USA, INC., ) | By:   Joel C. Hoppe |
|     Defendant. ) |         United States Magistrate Judge |
| ) | |

This matter is before the Court on Plaintiffs' Motion for Leave to File First Amended Complaint. Pls.' Mot. (citing Fed. R. Civ. P. 15), ECF No. 27 (Dec. 23, 2024).[1] In short, Plaintiffs want to supplement their Complaint, ECF No. 1 (Mar. 28, 2024), so that it sets out facts describing eight similar events that happened after they filed this lawsuit. Pls.' Br. in Supp. 2–6, ECF No. 28; *see* Fed. R. Civ. P. 15(d). Defendant opposes Plaintiffs' request. Defs.' Br. in Opp'n, ECF No. 29. It points out that Plaintiffs filed this motion after the deadline to file "any motion to amend the pleadings" expired, Super. Sched. Order ¶ 22, ECF No. 23 (Sept. 19, 2024), and argues that Plaintiffs failed "to explain why there is good cause to modify" that deadline. Defs.' Br. in Opp'n 1–2 (citing Fed. R. Civ. P. 16(b)(4)). Alternatively, Defendant asks the Court to deny leave to amend under Rule 15(a) because it believes that allowing Plaintiffs to add these new facts is prejudicial, in bad faith, and futile. *See id.* at 8–14. Plaintiffs' motion has been fully briefed, ECF Nos. 28, 29, 30, and argued, ECF No. 32. For the reasons explained below, I find that permitting Plaintiffs to serve their supplemental Complaint, ECF No. 28-1, is just and appropriate at this stage of the litigation. Fed. R. Civ. P. 15(d).

---

[1] This motion replaces Plaintiffs' "First Motion for Leave to File First Amended Complaint" docketed at ECF No. 25 (Dec. 17, 2024). The first motion will be denied as moot.

1

I. The Legal Framework

Rule 15 governs "Amended and Supplemental Pleadings" in federal civil litigation. Fed. R. Civ. P. 15(a)–(d). Subsections (a)–(c) all concern "Amendments," whereas subsection (d) concerns "Supplemental Pleadings." *See id.* Both allow a party to change its own pleading(s) in some way. *See Ohio Valley Env't Coal. v. U.S. Army Corps of Eng'rs*, 243 F.R.D. 253, 255 (S.D. W. Va. 2007). Broadly speaking, Rule 15(a)–(c) allows a party to add "a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," Fed. R. Civ. P. 15(c)(1)(B). *See* Fed. R. Civ. P. 15(a)(1)–(b)(2). Conversely, Rule 15(d) allows "a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). The basic difference between "amendments" and "supplements" therefore comes down to timing: the former are things that happened *before* the date of the *original* pleading; the latter are things that happened *after* the date of a prior pleading.[2] *See, e.g., Young-Henderson*, 945 F.2d at 775 ("As a general rule, facts accruing after the suit is brought may not be inserted

---

[2] There are also procedural differences related to obtaining the court's leave and serving responsive pleadings. *E.g., compare* Fed. R. Civ. P. 15(a)(3) ("Unless the court orders otherwise, any required response to an amended pleading *must* be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." (emphasis added)), *with* Fed. R. Civ. P. 15(d) ("The court *may* order that the opposing party plead to the supplemental pleading within a specified time." (emphasis added)). Amendments before trial can be made once as a matter of course within a certain time and then "only with opposing party's written consent *or* the court's leave." Fed. R. Civ. P. 15(a)(2) (emphasis added); *see, e.g., Int'l Refugee Assistance Project v. Trump*, 2018 WL 9945001, at *1 (D. Md. Nov. 2, 2018). Supplemental pleadings always require leave of court. *Young-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 775 (4th Cir. 1991); *see* Fed. R. Civ. P. 15(d). Additionally, "[b]ecause a properly filed amended complaint supersedes the original and becomes the operative complaint, it renders the original complaint of no effect." *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) (quotation marks omitted). A purely "supplemental" complaint simply brings the operative complaint "up to date," *Ohio Valley Env't Coal.*, 243 F.R.D. at 255. *See, e.g., New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963); *Hill v. Holiday*, No. 2:19cv140, 2021 WL 5987147, at * 1 n.1 (S.D. W. Va. Oct. 18, 2021), *adopted by* 2021 WL 5510248 S.D. W. Va. Nov. 24, 2021); *Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc.*, 335 F. Supp. 2d 636, 644–45 (M.D.N.C. 2004).

by way of amendment but must be added by supplemental pleading." (citing Fed. R. Civ. P. 15(d)); *Ohio Valley Env't Coal.*, 243 F.R.D. at 255–56. This distinction "is of little practical significance," however, because district courts use "nearly identical" standards of review when ruling on motions to amend pleadings versus motions to supplement them. *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002). "In either situation, leave should be freely granted, and should be denied only where good reason exists, such as prejudice" to the opposing party or because the moving party acted in bad faith. *Id.* The court also may "deny leave to supplement or amend where the proposed supplement is 'clearly insufficient or frivolous on its face.'" *Barber v. Hall*, No. 7:14cv519, 2015 WL 5310790, at *5 (W.D. Va. Sept. 11, 2015) (quoting *Anand v. Ocwen Loan Serv'g*, 754 F.3d 195, 200 (4th Cir. 2014)). "Delay alone is an insufficient reason to deny leave" under Rule 15. *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999). "Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Id.* The Fourth Circuit reviews a decision to grant or deny leave to amend or supplement a pleading for abuse of discretion. *Wall v. Fruehauf Trailer Servs., Inc.*, 123 F. App'x 572, 577 (4th Cir. 2005); *Rowe v. U.S. Fid. & Guar. Co.*, 421 F.2d 937, 942–43 (4th Cir. 1970).

## II. Discussion

A.     Rule 15(d) applies to Plaintiffs' motion

"On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Rule 15(d)'s purpose "is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *Ohio Valley Env't Coal.*, 243 F.R.D. at 255 (quoting *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d

1014, 1057 (9th Cir. 1982)); *accord New Amsterdam Cas. Co.*, 323 F.2d at 28 (explaining that Rule 15(d) "enabl[es] a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions"). "In short, Rule 15(d) allows a party to bring the case up to date." *Ohio Valley Env't Coal.*, 243 F.R.D. at 255.

Plaintiffs seek leave to file a "First Amended Complaint" under Rule 15(a), "which provides that . . . '[t]he court should freely give when justice so requires.'" *See* Pls.' Br. in Supp. 5 (quoting Fed. R. Civ. P. 15(a)(2)); *accord* Defs.' Br. in Opp'n 3–4, 8 (citing Fed. R. Civ. P. 15(a)); Pls.' Reply 3, 10 (citing Fed. R. Civ. P. 15(a)). As both parties recognize, however, the new facts alleged in Plaintiffs' proposed pleading, Prop. Supp'l Compl. ¶¶ 9–16, all describe transactions, occurrences, or events that happened at least three months after Plaintiffs filed their Complaint in March 2024. Pls.' Br. in Supp. 2–6; Defs.' Br. in Opp'n 6; Pls.' Reply 1–2. Rule 15(d), not Rule 15(a), applies in this situation. *Ohio Valley Env't Coal.*, 243 F.R.D. at 255. The fact that the parties mislabeled Plaintiffs' motion as one to "amend" under Rule 15(a)(2) does not prevent me from properly construing it as a motion to supplement under Rule 15(d). *See, e.g.*, *id.* at 243 F.R.D. at 256 (citing *Franks*, 313 F.3d at 198 n.15); *Jones v. Harrell*, No. 7:21cv541, 2024 WL 1258270, at *1–2 (W.D. Va. Mar. 22, 2024). Accordingly, I construe Plaintiffs' motion, ECF No. 27, as a motion to supplement their Complaint. *Ohio Valley Env't Coal.*, 243 F.R.D. at 256.

B.   *Rule 16(b)(4) does not apply to Plaintiffs' motion to supplement*

Defendant correctly points out that Plaintiffs filed this motion after the Superseding Scheduling Order's deadline to file "any motion to amend the pleadings," Super. Sched. Order ¶ 22, expired in November 2024. *See* Defs.' Br. in Opp'n 1, 3–8 (citing Fed. R. Civ. P. 16(b)(4)). It therefore argues that Plaintiffs must first demonstrate "good cause" to modify this deadline under

4

Rule 16(b)(4) before also satisfying the relatively liberal standard for amendment under Rule 15(a)(2). *Id.* at 3–8; *see Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298–99 (4th Cir. 2008). Rule 16(b) governs scheduling orders. It requires the judge to issue a "scheduling order [that] must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. 16(b)(3)(A). "The scheduling order may . . . include other appropriate matters" in addition to the mandatory deadlines listed above. Fed. R. Civ. P. 16(3)(B)(vii). Once this order issues, its "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Good cause requires the party seeking relief to show that the deadlines cannot reasonably be met despite the party's diligence." *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (per curiam) (cleaned up).

The controlling Scheduling Order in this case states that, "[e]xcept for good cause shown, *any motion to amend the pleadings* must be filed no later than 45 days from" September 19, 2024. Super. Sched. Order ¶ 22 (emphasis added). As explained, however, Plaintiffs do not want to "amend" their Complaint under Rule 15(a). They seek leave to "supplement" that pleading with facts describing new transactions and events that happened after March 2024. This request comes under Rule 15(d). *Ohio Valley Env't Coal.*, 243 F.R.D. at 256.

Rule 16 requires scheduling orders to limit the time within which parties may seek the court's leave to "amend the pleadings" under Rule 15(a)(2)—which the Scheduling Order in this case does—but it "does not require courts to set a deadline for supplemental pleadings" under Rule 15(d). *Ohio Valley Env't Coal.*, 243 F.R.D. at 256; *accord Desio v. State Farm Mut. Auto. Ins. Co.*, 339 F.R.D. 632, 639 (D. Nev. 2021); *Mason Tenders Dist. Coun. of Greater N.Y. v. Phase Constr. Servs.*, 313 F.R.D. 28, 36 n.10 (S.D.N.Y. 2016); *Beckett v. Inc. Vill. of Freeport*, No. CV 11-2163, 2014 WL 1330557, at *6 (E.D.N.Y. Mar. 31, 2014); *Watson v. Wright*, No.

5

08cv960, 2011 WL 1118608, at *4 (W.D.N.Y. Jan. 11, 2011), *adopted by* 2011 WL 1099981 (W.D.N.Y. Mar. 24, 2011). While a scheduling order may include a deadline to supplement pleadings, *e.g.*, Fed. R. Civ. P. 16(b)(3)(B)(vii), it is the express inclusion of such a deadline that triggers Rule 16(b)(4)'s "good cause" requirement. *Ohio Valley Env't Coal.*, 243 F.R.D. at 256; *Watson*, 2011 WL 1118608, at *4–5. The Scheduling Order in this case does not set a deadline to seek leave to supplement the pleadings. Accordingly, Plaintiffs are not required to show "good cause" for filing their motion to supplement after the amendment deadline passed. *Ohio Valley Env't Coal.*, 243 F.R.D. at 256.

C.     *Plaintiffs may serve their Proposed Supplemental Complaint on Defendant*

The Court should grant Plaintiffs leave to serve their proposed supplemental complaint unless it would unfairly prejudice Defendant, Plaintiffs acted in bad faith, or Plaintiffs' proposed changes are facially insufficient or frivolous. *See Franks*, 313 F.3d at 193. Defendant argues that all three factors are present here. Def.'s Br. in Opp'n 8–10 (prejudice); *id.* at 10–12 (bad faith); *id.* at 13–14 (futility). I disagree.

1.     *Summary*

This is a lemon law case. In June 2023, Plaintiffs Robert Cole and Staci Lynn Guillemin leased a new Lucid Air Touring IP2 from Lucid Motors in Tysons, Virginia. Compl. ¶ 4. Defendant Lucid USA, Inc. manufactured the car. *See id.* ¶ 11. "Lucid Motors is an authorized dealer of Defendant Lucid USA Inc. for sales and warranty service repair." *Id.* Plaintiffs' new car "came with 4-Year/50,000 mile basic and 8-Year/100,000 mile powertrain warranties issued by the manufacturer." *Id.* ¶ 5. The total lease price is $128,814.95. *Id.*

6

On September 18, 2023, Cole requested a mobile-service visit from a Lucid Motors-Tysons technician because the "right turn signal malfunction warning light had illuminated." *Id.* ¶ 6. The technician who came to Cole's house ran tests and drove the car, but he could not "correct the defect. No repair was made." *Id.* On December 18, Cole took the car to Lucid Motors-Tysons because "the Dream Drive Pro" function was not responding. *Id.* ¶ 7. This "function allows the vehicle to essentially drive itself." *Id.* Cole reported four different times when the Dream Drive Pro "stopped working while the car was still driving." *Id.* "[V]arious things happen[ed]" when this function failed, including:

> (1) the brakes apply sharply and randomly without warning for no reason; (2) the electronic screens the driver needs to operate the vehicle intermittently and randomly go blank, requiring the car to be stopped and the electrical system of the entire car must be rebooted; and [(3)] the vehicle will randomly switch itself from self-drive to assisted-drive causing loss of control.

*Id.* "The technicians at Lucid Motors verified that the Dream Drive Pro was not operational." *Id.* They "ran various tests and replaced several components." *Id.* Cole picked up the car from Lucid Motors-Tysons on December 27. *Id.* In January 2024, the Dream Drive Pro function stopped working while Cole was driving 60 miles per hour. *Id.* ¶ 8.

In March 2024, Plaintiffs filed a two-count complaint alleging that Defendant Lucid USA, Inc. violated the Virginia Motor Vehicle Warranty Enforcement Act, Va. Code §§ 59.1-207.9 et seq., Compl. ¶¶ 9–14 (Count I); and the Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq., Compl. ¶¶ 15–21 (Count II). The complaint seeks damages equal to "the lease price of the vehicle, $128,814.95, as well as all finance charges, incidental costs, [and] compensation in the amount of $10,000 for inconvenience and loss of use." *Id.* at 5 (citing Va. Code § 59.1-207.14). Defendant denies that it is liable under either statute. *See generally* Answer 3–9, ECF No. 9 (May 10, 2024).

Plaintiffs now seek to supplement their Complaint. Their proposed supplemental pleading realleges the original problems with the car's right turn signal and self-driving function. Prop. Supp'l Compl. ¶¶ 6–8. They want to add new facts about the car's continued problems and eight "digital service orders" that Cole submitted to Lucid USA, Inc. in July, October, and November 2024. *See id.* ¶¶ 9–16; Pls.' Br. in Supp. 2–6. More specifically:

1. On July 2, Cole submitted a digital service order because the car's Bluetooth was malfunctioning. Prop. Supp'l Compl. ¶ 9. "Defendant's customer care provided remote service . . . to attempt to repair the issue." *Id.*

2. On July 18, Cole submitted a digital service order because the car's "screen malfunctioned." *Id.* ¶ 10. He told Lucid USA "that the screen was 'stuck on a charging screen for over 30 hours.'" *Id.* (emphasis omitted). "Defendant attempted to remotely repair" the problem by giving Cole step-by-step instructions on how to "perform a Profile Switch when the vehicle is parked." *Id.* "This repair attempt failed." *Id.*

3. On July 23, Cole submitted a digital service order because the car's "'doors [were] sticking and not opening.'" *Id.* ¶ 11 (emphasis omitted). Lucid USA acknowledges "the service order was handed to [its] service team to determine how to repair the defect. This repair attempt failed." *Id.*

4. On October 5, Cole submitted a digital service order because the car's "rear trunk and front trunk were not functioning properly." *Id.* ¶ 12. Defendant had not responded to this complaint of December 23, 2024. *See id.*

5. On November 7, Cole submitted a digital service order because he "was unable to get the vehicle to open, therefore being locked out of the vehicle." *Id.* ¶ 13. Defendant responded to this complaint on November 19. *See id.*

6. On November 8, Cole submitted a digital service order because the car's "rearview camera was off on the top of the display" screen. *Id.* ¶ 14. Defendant also responded to this complaint on November 19. *See id.*

7. On November 14, Cole submitted a digital service order because the car's "Drive Assist feature would not function properly." *Id.* ¶ 15. He told Lucid USA that he kept "'getting a message in red lettering saying drive assist canceled' and Drive Assist keeps canceling every time this happens.'" *Id.* (emphasis omitted). On December 6, Defendant told Cole that someone would call him "to schedule an appointment to get this serviced," and that he should not use the Drive Assist function "for the time being." *Id.* (emphasis omitted). *Id.* He had not received a scheduling phone call as of December 23, 2024. *See id.*

8

      8. On November 22, Cole submitted a digital service order because the car's "Adaptive Cruise Control would not turn on." *Id.* ¶ 16. Lucid USA responded on December 5. *Id.* It "inquired whether the problem had occurred again, but [it] did not provide any repair options." *Id.* Cole told Defendant that the problem had "occurred twice on back-to-back days" when he submitted the service request. *Id.*

Plaintiffs want to add these "eight new allegations" to support their two existing causes of action against Defendant. Def.'s Br. in Opp'n 9; *see* Prop. Supp'l Compl. ¶¶ 17–24 (Count I); *id.* ¶¶ 25–31 (Count II). The proposed supplemental pleading does not assert any new counts or claims for relief. *See* Prop. Supp'l Compl. ¶¶ 4–35.

    2.    *Analysis*

    Defendant asserts that it "has expended significant resources preparing a motion for summary judgment and trial strategy" based on the allegations in Plaintiffs' original complaint. Defs.' Br. in Opp'n 9. It argues that allowing Plaintiffs to add "eight new allegations" about the digital work orders would prejudice Defendant because it "would render most of these efforts moot, as Lucid would have to re-conduct discovery, re-depose Plaintiff Cole about the new allegations and completely overhaul its trial strategy approximately four months before trial." *Id.* When Defendant filed its opposition in early January 2025, the discovery cutoff was more than six weeks away, and a jury trial was set to begin on May 19, 2025. *See id.*

    On February 19, I granted Defendant's oral motion to stay all deadlines, ECF No. 33, and continued the trial. Order, ECF No. 35. The presiding District Judge will set new deadlines for completing discovery, filing dispositive motions, and a trial date after Plaintiffs' Rule 15 motion is resolved. *See id.* Accordingly, Defendant will have an opportunity to conduct discovery about the digital work orders if it wants to incorporate new facts into a motion for summary judgment or its trial strategy. Moreover, these new facts will not "dramatically expand the focus of this case," Def.'s Br. in Opp'n 9. They logically relate to Plaintiffs' existing causes of action and

9

simply bring the parties' dispute up to date as of December 2024. *Compare Ohio Valley Env't Coal.*, 243 F.R.D. at 256, 257 (concluding that "neither current parties nor the newly permitted" defendants were prejudiced by allowing plaintiff to file a fifth supplemental complaint because the court "is required to provide the parties an opportunity to present evidence, witnesses, and defenses" on the supplemental pleading and because the legal issue presented by the new factual allegations "mirror[ed] the original Complaint" (citing *Rowe*, 421 F.2d at 943–44)), *with Agbaje v. Hargrave Military Acad.*, 328 F. Supp. 3d 539, 543, 545–46 (W.D. Va. 2018) (denying pro se plaintiff's motion to add a new claim for negligent retention, filed "immediately before" discovery closed and after defendant moved for summary judgment on the existing ordinary negligence claim, because allowing plaintiff to raise a factually and legally unrelated cause of action "at this late date is undoubtably prejudicial" to defendant). Allowing Plaintiffs to serve their proposed supplemental complaint now will "promote as complete an adjudication" of the parties' dispute over this car's alleged defects as possible, *Ohio Valley Env't Coal.*, 243 F.R.D. at 255, and "avoid the cost, delay, and waste of separate actions," *New Amsterdam Cas. Co.*, 323 F.3d at 28.[3]

Defendant also asserts that Plaintiffs' proposed changes are made in bad faith. Def.'s Br. in Opp'n 10–13. "Bad faith includes seeking to amend a complaint for an improper purpose or seeking leave to amend after repeated pleading failures." *Wilkins v. Wells Fargo Bank, N.A.*, 320 F.R.D. 125, 127 (E.D. Va. 2017) (cleaned up); *see, e.g.*, *Daulatzai v. Maryland*, 606 F. Supp. 3d 252, 262 (D. Md. 2022) (finding bad faith where plaintiff did not explain three-month gap between the time the court dismissed her second amended complaint and the time she sought

---

[3] This does not necessarily mean Plaintiffs will be allowed to supplement their complaint again. Fed. R. Civ. P. 15(d); *see New Amsterdam Cas. Co.*, 323 F.2d at 28–29 (explaining that supplemental pleadings "ought to be allowed as of course, unless some particular reason for disallowing them appears, though the court has the unquestioned right to impose upon their allowance when fairness appears to require it").

10

leave to file a third amended complaint, the new factual allegations were "not based on recent developments" and plaintiff did not explain "why they could not have been included in an earlier pleading," the amendments did not correct repeated pleading defects, and plaintiff was engaged in "gamesmanship" because her proposed pleading "significantly revise[d] her factual and legal claims" against defendant); *Agbaje*, 328 F. Supp. 3d at 545 (finding bad faith where plaintiff's "last-minute" amendments "were clearly an effort to salvage his case and avoid summary judgment"). There is no evidence of bad faith here. Unlike in *Daulatzai*, Plaintiffs want to add facts based on recent events that could not have been included in their original complaint. Fed. R. Civ. P. 15(d). These facts are consistent with the two existing causes of action. *See Wilkins*, 320 F.R.D. at 128; *Ashton v. City of Concord, N.C.*, 337 F. Supp. 2d 735, 741 (M.D.N.C. 2004). They "do not 'significantly' revise the lawsuit." *Terran Biosci., Inc. v. Compass Pathfinder Ltd.*, Civ. No. 22-1956, 2025 WL 1928014, at *15–16 (D. Md. July 11, 2025) (quoting *Daulatzai*, 606 F. Supp. 3d at 265).

      Defendant asserts that Plaintiffs knew about some of the digital work orders well before they initially moved to amend on December 17, 2024. *See* Def.'s Br. in Supp. 10–11 (citing Prop. Supp'l Compl. ¶¶ 9–12). Yet, Plaintiffs did not file that motion until four weeks after Defendant's counsel deposed Cole on November 20. *See id.* at 11–13. Delay alone is not necessarily evidence of bad faith. *See United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 198–99 (4th Cir. 2022). A finding of bad faith may be based on "undue delay," which "can be inferred from the absence of explanation for the delay." *Naden v. Saga Software, Inc.*, 11 F. App'x 381, 383 (4th Cir. 2001) (per curiam). Here, Plaintiffs explain that they did not realize the legal significance of the digital work orders until Defendant's counsel brought it up at Cole's deposition. *See* Pl.'s Reply 6–8, 12–13. They then needed to gather more

11

information and give it to their attorney so he could draft the motion to amend, supporting brief, and proposed amended complaint. *See id.* at 7; W.D. Va. Civ. R. 11(c). A four-week delay was not unreasonable in this case. *See, e.g.*, *Aloi v. Moroso Inv. Partners, LLC*, Civ. No. 11-2591, 2013 WL 6909151, at *7 (D. Md. Dec. 31, 2013).

      Finally, Defendant asserts that Plaintiffs' "proposed amendments are futile because these 'new facts' are legally defective and cannot survive a motion to dismiss" a claim for relief under Virginia's lemon law. Def.'s Br. in Opp'n 14; *see id.* at 13–14 (citing *Subaru of Am., Inc. v. Peters*, 500 S.E.2d 803, 806 (Va. 1998); Va. Code §§ 59.1-207.11 to 59.1-207.13). It argues that Plaintiffs must be able to show they "presented Lucid with *the same* nonconformity three or more times" and "the same nonconformity continues to exist" despite Lucid's "repair attempts." *Id.* at 14 (citing Va. Code § 59.1-207.13(B)(1)). Plaintiffs' proposed supplemental complaint "alleges eight new and distinct nonconformities that were either addressed remotely or not addressed at all." *Id.* Defendant also asserts that "filing a digital work order does not constitute [a] 'repair attempt,' as intended by the Virginia legislature," because the car must be "presented to Lucid for an in-person repair attempt" so Lucid has a chance to repair any alleged defects "in its service location." *Id.* It does not cite any authority to support such a narrow reading of the statute. *Cf. Reynolds v. Freightliner, LLC*, No. 4:07cv1, 2007 WL 2220569, at *6 (W.D. Va. Aug. 2, 2007) (denying defendant's Rule 12(b)(6) motion to dismiss Virginia lemon law claim in part because "the statute[] is remedial one and must be read broadly to accomplish its intended purpose—protecting purchasers of motor vehicles"); *Subaru of Am.*, 500 S.E.2d at 805 ("[T]he Act concentrates on the manufacture's written factory warranty for the particular vehicle, and whether that vehicle can be brought into conformity with the warranty's terms.").

Broadly speaking, Virginia's lemon law requires car "manufacturers or their agents to resolve good-faith vehicle warranty complaints promptly. In the event that the vehicle is not brought into conformity with the manufacturer's warranty" within a certain time period, the manufacturer must give the consumer "a replacement vehicle or a full refund." *Rodriguez v. Ford Motor Co.*, No. 7:21cv529, 2023 WL 141686, at *2 (W.D. Va. Jan. 31, 2023) (citing Va. Code § 59.1-207.10). Those remedies are available only if the manufacturer, its agents, or authorized dealers

> [(1)] do not conform the motor vehicle to any applicable warranty [(2)] by repairing or correcting any defect or condition, including those that do not affect the driveability of the vehicle, which [(3)] significantly impairs the use, market value, or safety of the motor vehicle to the consumer [(4)] after a reasonable number of attempts during the lemon law rights period.

Va. Code § 59.207.13(A). These are the essential elements of a successful Virginia lemon law claim. *See Subaru of Am.*, 500 S.E.2d at 806–07.

The "statute creates a presumption that may be employed, if needed, by a consumer to establish a 'reasonable number of attempts' and significant impairment."[4] *Subaru of Am.*, 500 S.E.2d at 806 (citing Va. Code § 59.1-207.13(A), (B)(1)–(3)). Subsection (B) states that

> [i]t shall be presumed that a reasonable number of attempts have been undertaken to conform a motor vehicle to any warranty and that the motor vehicle is significantly impaired if during the lemon law rights period either:
>
> 1. The same nonconformity has been subject to repair three or more times by the manufacturer, its agents or its authorized dealers and the same nonconformity continues to exist;
>
> 2. The nonconformity is a serious safety defect that has been subject to repair one or more times by the manufacturer, its agents or its authorized dealers and the same nonconformity continues to exist; or

---

[4] "'Significant impairment' means to render the new motor vehicle unfit, unreliable or unsafe for ordinary use or reasonable intended purposes." Va. Code § 59.1-207.11 (definitions). The statute does not define what constitutes an "attempt" to repair or correct an alleged nonconformity. *See generally id.* §§ 59.1-207.10 to 59.1-207.13(G).

> 3. The motor vehicle is out of service due to repair for a cumulative total of 30 days, unless such repairs could not be performed because of conditions beyond the control of the manufacturer, its agents or its authorized dealers. . . .

Va. Code § 59.1-207.13(B)(1)–(3). These presumptions are not essential elements of a successful Virginia lemon law claim. *See Subaru of Am.*, 500 S.E.2d at 806–07 (concluding defendant's argument that plaintiff who prevailed at trial "failed to establish that the 'same nonconformity' was 'subject to repair' three times during the 18-month lemon law period" was "without merit" because plaintiff presented evidence sufficient for "the jury to find, without the benefit of the presumption," that she was entitled to relief under § 59.1-207.13(A)). The plaintiff must show only that "there was a failure to conform the vehicle to the warranty 'after a reasonable number of attempts during the [18-month] lemon law rights period'" which "significantly impairs" the car's use, market value, or safety. *Id.* (quoting Va. Code § 59.1-207.13(A)).

A court may deny leave to supplement when the proposed changes could not survive a Rule 12(b)(6) motion to dismiss. *United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014); *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). Plaintiffs' new factual allegations, Prop. Supp'l Compl. ¶¶ 9–16, support a reasonable inference that Defendant Lucid USA "or its agents were afforded a reasonable number of attempts to conform the vehicle during the 18-month period" between June 2023 and December 2024. *Cf. Subaru*, 500 S.E.2d at 807 (describing the burden of proof at trial). Complex questions about how Virginia's lemon law should apply in cases where "remote" repairs or attempts are possible, Def.'s Br. in Opp'n 14; Pls.' Reply 13–17, must wait for another day. *See Reynolds*, 2007 WL 2220569, at *6–7. Accordingly, Plaintiffs' proposed changes are not futile.

### III. Conclusion

Plaintiffs' motion, ECF No. 27, is hereby **GRANTED**. Plaintiffs shall file a clean copy of their supplemental Complaint, ECF No. 28-1, and serve the same on Defendant within ten (10)

days from the date of this Order. Defendant shall file a responsive pleading within twenty-one (21) days from the date Plaintiffs serve their supplemental Complaint. Fed. R. Civ. 15(d). Plaintiffs' motion at ECF No. 25 is denied as moot.

    The Clerk shall send a copy of this Memorandum Opinion & Order to the parties.

    It is so ORDERED.

                                 ENTER: August 13, 2025

                                 Joel C. Hoppe
                                 U.S. Magistrate Judge